# Deane *v.* Geilfuss & Company, Appellants.

*Judgments—Petition to open judgments—Discretion of Court.*

A petition to open a judgment is addressed to the sound discretion of the court, and the refusal thereof will not be reversed where there is no evidence of abuse of discretion.

*Landlord and tenant—Subleases—Agreement to maintain repairs to be used by sub-tenant—Eviction.*

Where a tenant has sublet the third floor of a building to a sub-tenant, who installed heavy printing apparatus which impaired the safety of the building, notice by the municipal authorities to remove it will not constitute an eviction by the landlord.

Where the sub-tenant has voluntarily vacated rather than participate in the cost of repairs for which the tenant was responsible, under the lease, there is no eviction by the landlord, and the tenant is responsible for the rent under the terms of the lease.

Argued May 4, 1925. Appeal No. 197 April Term, 1925, by defendants from judgment of C. P. Allegheny County, July T., 1924, No. 1622, D. S. B., in the case of W. J. R. Deane v. C. H., E. H. and E. P. Geilfuss, partners trading as E. P. Geilfuss & Company. Before Porter, Henderson, Trexler, Keller, Linn and Gawthrop, JJ. Affirmed.

Rule to open judgment. Before Swearingen, J.

The facts are stated in the opinion of the Superior Court.

The court discharged the rule. Defendants appealed.

*Error assigned* was the decree of the court.

*A. Leo Weil, Jr.,* of *Weil, Christy & Weil,* for appellants.

*Simon T. Patterson,* of *Wallace, Patterson & Collin,* for appellee.

Opinion by Linn, J., October 6, 1925:

This appeal is from the refusal to open a confessed judgment entered by a landlord against his tenant for failure to pay the full amount of rent reserved in a lease. The refusal was based on a claim that the subtenant had been evicted by the landlord from the third floor of the building. Alleging that the eviction relieved him of paying rent for the third floor, he desired the judgment opened to make that defense.

The answer denied the eviction and averred that the tenant had sub-let the third floor to a sub-tenant who there conducted a printing business, using heavy machinery whose operation caused such vibration of and resulting deterioration in the walls of the building that the bureau of building inspection of the City of Pittsburgh notified the tenant that the building was "badly impaired and in a weak and dangerous condi-

tion, too heavily loaded, and not safe for the purposes now used......," and notified them to make the building "safe and secure within thirty days." He averred that subsequently the superintendent of the bureau of building inspection went to the premises and ascertained that no repairs could be made unless the sub-tenant's heavy printing machinery were removed, and that the superintendent ordered the sub-tenant to remove it. He also averred that as the order was not promptly complied with, the superintendent of building inspection called upon plaintiff's agent, (whose authority was to rent the building and collect the rent), and instructed the agent to notify the sub-tenant to vacate, pursuant to which a letter was sent by the agent to the sub-tenant on January 28, 1924, advising accordingly.

Sec. 1 (b) of the Act of 1915, P. L. 297, authorizes the city "to provide and require that the owner or occupant of any building shall alter, repair, or remove any buildings or structures, or part thereof......" The sub-tenant was therefore as much amenable to the order as the tenant.

The application to open such judgment is addressed to the judicial discretion controlled by well known equitable principles; on appeal this court inquires only whether such discretion has been rightfully exercised. By the lease, appellants agreed to keep the premises in good repair, and to use them only for wholesale or retail business, or light manufacturing, and to surrender them in good order, reasonable wear and tear and accidents by fire excepted. The vibration of the printing machinery caused the deterioration on which the action of the city was based.

The notice of the city, calling attention to the matter, specified that it was given pursuant to the act of June 7, 1895, P. L. 135; it was mailed to the agent of plaintiff, authorized by him to rent the building and collect the rent. Appellants and their sub-tenant had prompt

notice thereof and both participated with the superintendent of building inspection in the discussion of repairs to the premises. The sub-tenant did not move out until April 1. Appellants now make the point that as the act of 1895 referred to in the notice, had been repealed by the act of May 13, 1915, P. L. 297, the action of the city was void. The brief seems to reach that conclusion by pointing out that the repealed act had required service by mail and that the act of 1915 requires service by posting in a conspicuous place on the building referred to. Appellants gain nothing by the difference. They had timely notice of deterioration for the repair of which they were responsible by the terms of their lease; they participated in what occurred thereafter, and sustained no injury by the omission to post a notice of action by the city, when, as the record shows, they were already advised of the notice by the city first given December 19, 1923, to plaintiff's agent.

But the essential thing, and on this we base our decision, is that the court below found from the evidence that on the 1st of April the sub-tenant "voluntarily vacated the premises"; that the sub-tenant "went out of the building rather than bear any part of the necessary repairs". There is evidence to support both statements, but appellants contend—if we understand their argument—that those statements can now be given no consideration because they are in "violation of the principle......that only the questions raised in the pleadings can be considered". The principle is true enough, but the answer already quoted, set up that the sub-tenant was not evicted by plaintiff; certainly the defendants' plea of no eviction is directly proved by showing a voluntary vacation.

We might stop here with the voluntary vacation by the sub-tenant, (Harper & Brother Co. v. Jackson, 240 Pa. 312, 315) but in view of the elaborate argument of appellants, another point may perhaps be referred to.

Much is said about the effect of the conduct of defendants' renting agent in advising the sub-tenants of the notice received by the agent from the bureau of building inspection, the suggestion being that thereby the landlord adopted the notice and ordered the sub-tenant to vacate; appellants say that because the plaintiff did not "repudiate" (whatever that may mean in this connection) the notice when he learned it had been sent, he must be considered as having authorized it. The record shows that the renting agent was also the agent of appellants in renting to the sub-tenant, and that plaintiff knew nothing of the notice when sent by the agent. In the circumstances disclosed by the evidence, the landlord's relation to the notice became immaterial, because, the fact at the bottom of the case is, that competent municipal authority condemned the further occupation of a building for the repair of which appellants were directly responsible; that condemnation was communicated to the tenant and to the sub-tenant, who more than two months later, after participating with the tenant and the city in the discussion of the condition of the building and what was required by the city to make it usable, moved out rather than make required repairs; for that voluntary vacation the plaintiff is not responsible.

Judgment affirmed.